PEOPLE, *ex rel.* WARD, *v.* GREEN.

1. MUNICIPAL CORPORATIONS—COMMON COUNCIL—GRANT OF RIGHTS IN STREETS.

Under 1 How. Stat. § 3621, authorizing a majority of a city council, in writing signed by them, to grant a right to construct a plank road in a street, such a right is obtained by a conveyance executed by the mayor and two of the four aldermen of a city whose charter makes the mayor and aldermen the common council.

2. CORPORATIONS—ARTICLES OF ASSOCIATION—AMENDMENT—EXTENSION OF CORPORATE EXISTENCE.

An amendment of the articles of association of a corporation, extending the period of its existence at a time when there was no statute allowing such an amendment, which provision is continued in a subsequent amendment of the articles, made after the passage of an act authorizing such an amendment, operates as a valid extension of the corporate existence, even though the preamble to the amended articles does not refer to the proposed extension.

3. SAME—PLANK-ROAD COMPANIES.

Under 1 How. Stat. § 4866, providing that any corporation may amend its articles of association in manner consistent with the provisions of the act under which it was organized, a plank-road company incorporated under 1 How. Stat. § 3597 *et seq.*, may, by amendment, continue its corporate existence beyond the time fixed by the original articles, provided the entire term does not exceed that for which it might have incorporated in the first instance.

Error to Oakland; Smith, J.   Submitted February 4, 1898.   Decided March 29, 1898.

*Quo warranto* proceedings by the people, on the relation of Willis C. Ward, against Hartwell Green and others, to inquire into the corporate existence of the Pontiac & Orchard Lake Gravel-Road Company.   From a judgment for respondents, relator brings error.   Affirmed.

*Fred A. Maynard,* Attorney General (*James H. Lynch* and *Chamberlain & Guise,* of counsel), for appellant.

*Aug. C. Baldwin* and *A. & S. H. Perry,* for appellees.

LONG, J. This proceeding is by information in the nature of a *quo warranto,* filed under section 8635, 2 How. Stat., for the purpose of testing the validity of the existence of a corporation known as the Pontiac & Orchard Lake Gravel-Road Company, which claims the right to operate a toll road from Williams street, in the city of Pontiac, over Orchard Lake avenue, in said city, and highways adjoining thereto in the townships of Pontiac, West Bloomfield, and Bloomfield, — altogether a distance of about 10 miles.

It appears that on September 9, 1865, a corporation adopted articles of association to construct a gravel road "from the corporate limits of the city of Pontiac on the Orchard Lake road; thence, along the line of said road, to a point about 10 rods west of the outlet of Orchard Lake, a distance of four miles." These articles were filed with the secretary of state on October 13, 1865. These articles did not provide the period of corporate existence, and it was evidently thought that they were defective; for, on March 23, 1866, other articles of association were filed in the office of the secretary of state, bearing date of March 2, 1866. They were filed under Act No. 155, Laws 1851 (1 How. Stat. § 3597 *et seq.*) The period of existence was fixed at the term of 30 years, with capital stock at $5,000. The corporation was organized to construct a gravel road "from the intersection of the Orchard Lake road with Williams street; thence, upon the line of said Orchard Lake road, to a point where the road, passing around the north shore of Orchard Lake, first strikes said Orchard Lake, a distance of four and one-half miles," —thus including other territory than that embraced in the former articles. It is recited in the preamble that "permission has been given in writing by the supervisors,

township clerks, and highway commissioners of the respec-tive townships through which said gravel road is to pass, and also by the common council of the city of Pontiac, which permits have been duly filed in accordance with the law in such cases made and provided." On July 14, 1866, this corporation adopted amended articles. In the preamble thereto it is recited that "it was deemed neces-sary, in order to complete the road and construct suitable bridges and culverts, to increase the capital stock of the company, and also to change the terminus of the road." These articles provided a capital stock of $10,000, and ex-tended the line of the road to five miles. These amended articles were filed with the secretary of state July 17, 1866. They also fixed the period of the corporate existence at 50 years.

In November, 1869, another corporation, known as the Lake Shore Gravel-Road Company, was organized to con-struct a gravel road from the western terminus of the Pontiac & Orchard Lake Gravel-Road Company's road southerly about two miles. January 11, 1875, at a meet-ing of its stockholders, the Pontiac & Orchard Lake Gravel-Road Company adopted amended articles of asso-ciation. These were filed with the secretary of state January 25, 1875. The preamble to these amended articles recites that it "was resolved to amend the charter of said company so as to embrace the territory included in the franchises of the Lake Shore Gravel-Road Company, and to increase the capital stock, amending articles two and five, respectively, in the articles of association of the Pontiac & Orchard Lake Gravel-Road Company so that said articles shall read as follows." Article 2 provided a capital stock of $20,000, instead of $10,000, as provided under the articles of July, 1866. Article 5 provided an extension of the line, so as to include the other company's line and other lines, embracing in all about 10 miles of road. Article 8 provides that "the period for which this organization shall be a body corporate shall be 50 years from the date of the original organization of the company,

September 9, 1865,—which amended articles of association were unanimously adopted at a meeting of all the stockholders of said corporation at the meeting aforesaid." The Pontiac & Orchard Lake Gravel-Road Company thereafter assumed control over and operated the routes previous to that time operated by itself and the other company.

1. It is contended by relator that this corporation never obtained any legal grant from the city of Pontiac to operate over any of the streets of said city. At the time the right was granted the corporation to occupy the streets of the city of Pontiac, the charter made the mayor and aldermen the common council. Act No. 192, Laws 1861, § 36. There were two wards in the city, and consequently four aldermen, who, with the mayor, made five members of the council. Two aldermen and the mayor signed the conveyance of the right of way over the streets of the city. Section 3621, 1 How. Stat., relating to such corporations, in force at the time when this conveyance was made, provides:

"Whenever such company may wish to use any part of a street in any city * * * for the construction of their plank road, * * * such company shall apply to the common council * * * for the right to construct their plank road thereon; and it shall be the duty of such common council * * * to examine, at the expense of such company, so much of any such street as may be wanted, * * * and if, in the opinion of a majority of such common council, * * * the public interest would not be prejudiced by granting the application of such company, said common council * * * may, in writing signed by them, grant to such company a right to enter upon, take, and use such * * * street, * * * and, upon filing such grant in writing in the office of the register of deeds, * * * the said company may forthwith enter upon, take, and use such street," etc.

We think, under this statute and from the conveyance taken, it cannot be said that the company did not obtain a legal grant from the city of Pontiac.

2. It is contended that the period of existence of the corporation expired not later than March 23, 1896. It is

evident that the learned counsel for relator fix this period for the expiration of the charter as the limit of the 30 years from the time the articles of association of March, 1866, were filed with the secretary of state. The question for consideration is, therefore, whether the articles of association have been legally and properly amended so that the period of the life of the corporation is extended to 50 years from its organization. The only power to amend the articles of association was in reference to the increase of the amount of the capital stock, until Act No. 86, Laws 1871, was passed. That act amended section 7, chap. 55, Rev. Stat. 1846, and, among other things, provided:

"Such corporation may at any time amend its articles of association by filing amended articles of association in the office of the secretary of state, which said amended articles of association shall be made in all respects consistent with the provisions of the act or acts under which such corporation may be organized, and shall be executed by said corporation under its corporate seal, and by stockholders of said corporation owning at least a majority of all the capital stock of said corporation, under their seals, and duly acknowledged." 1 How. Stat. § 4866.

It is not contended but that this amendment, made in 1875, complied in all respects with the requirements of this statute; but the claim is that, as in July, 1866, when the amended articles were filed providing for an existence of the corporation for 50 years, there was no statute allowing such an amendment, therefore no amendment has ever been made to that section of the articles continuing the corporate existence beyond the time fixed in the articles in March, 1866; that the action taken, as recited in the amended articles filed January 25, 1875, does not amount to an amendment of article 8, which is a mere repetition of the article adopted in July, 1866; and that the preamble rebuts any presumption that it was intended by the stockholders to amend that article continuing the life of the corporation 50 years from date of organization. This preamble has been given.

We cannot agree with this contention. While it is true

that the amendment of July 17, 1866, had no legal effect, because there was then no power to so amend, yet the articles contained the provision for a continued existence of 50 years when the amendment of 1875 was adopted, and that provision was continued in the articles when the amendment was made in 1875. There is nothing to show that the stockholders or directors had any doubt whatever of the efficiency of that amendment, and it is significant that there was incorporated in the articles the very provision which continued it for 50 years. The articles were so adopted and filed with the unanimous consent of all the stockholders.

Counsel cite *People* v. *Plainfield Ave. Gravel-Road Co.*, 105 Mich. 9, and contend that that case sustains their claim that the amendatory act of 1871 did not confer the right to extend the term of existence of that corporation. In that case, however, the company sought to abandon a part of its road, and it was held that it could not abandon that part. It appeared that that part had been included in its line by an amendment of its articles, and the company, in order to get rid of that portion, and the expenses incident to the building of a bridge thereon, sought to again amend its articles and exclude that portion. The amended articles were filed, and thus that part abandoned, so far as the company could abandon it. After citing the statute (1 How. Stat. § 4866) it was said:

"Under this act these corporations may amend their articles in all those matters which do not affect the public, and with which, therefore, the public is not concerned, such as increase or decrease of their capital stock. As already shown, they cannot appropriate to their use or benefit any portion of an existing public highway without the assent of the proper public authorities."

Having amended by taking in this part of the road, it was said: "They cannot receive the benefits without accepting and bearing the burdens." It was therefore held that the statute did not confer the right to abandon this portion.

Clearly the statute (section 4866) gives the right in most explicit terms to amend; the amended articles, however, to be made in all respects consistent with the provisions of the act or acts under which the corporation was organized. The act under which the company here was organized permitted a corporate existence of 50 years, and the amendment made was within the terms of that act.

It may be further added, in reference to the claim that the preamble does not show any attempt to amend the article extending the time of corporate existence, that the court below found that "there was no intention on the part of the Pontiac & Orchard Lake Gravel-Road Company, when it attempted to amend its articles of association on January 11, 1875, to change article 8 thereof. The company treated the amended articles of July, 1866, as properly made and filed, and in 1875 copied article 8 therefrom."

We think the court below very properly entered judgment in favor of the respondents. That judgment must be affirmed.

The other Justices concurred.